**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID J. CLEMENS, | |
| | CIVIL ACTION   1:14-cv-10338 |
| Plaintiff, | |
| | |
| v. | COMPLAINT |
| | |
| PNC MORTGAGE, a division of PNC Bank, N.A.; and PNC BANK, N.A. | JURY TRIAL DEMANDED |
| | |
| Defendants. | |

**COMPLAINT FOR RELIEF**

NOW COMES the Plaintiff, DAVID J. CLEMENS ("CLEMENS"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, PNC MORTGAGE, a division of PNC Bank, N.A.; and PNC BANK, N.A. ("Defendants"), as follows:

**NATURE OF THE ACTION**

1.      Clemens brings this action for damages for Defendants' violation of the Real Estate Settlement Procedures Act ("RESPA"), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and for Defendants' Breach of Contract, Promissory Estoppel, and Fraudulent Misrepresentation.

**JURISDICTION AND VENUE**

2.      Jurisdiction is proper pursuant to 28 U.S.C. §§1331, 1337, as this action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

1

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

4.      Clemens is a natural person and a citizen of the State of Illinois. Clemens resides on Laramie Avenue in Burbank, Illinois and his home mortgage is at issue in this lawsuit.  At all times relevant, Clemens was approved for a Special Forbearance Repayment Plan.

5.      Defendant, PNC Mortgage is a division of PNC Bank, NA.

6.      PNC Bank, NA ("PNC") is a National Association Bank whose headquarters is located at 222 Delaware Avenue, Wilmington, Delaware.  (FDIC Certificate Number 6384).

## FACTS SUPPORTING CAUSE OF ACTION

7.      On or About February 23, 2005, Clemens purchased the real estate commonly known as 8442 Laramie Avenue, Burbank, Illinois 60459. ("Real Estate").  PIN number 19-33-325-036-0000.

8.      On or about February 23, 2005, Clemens executed a note in favor of National City Mortgage, a division of National City Bank of Indiana and a mortgage that secured the promissory note ("the subject loan") against the Real Estate.   The mortgage was recorded with the Cook County Recorder of Deeds on February 23, 2005 as document number 505411040. *See* attached Exhibit A, a true and correct copy of the Note and Mortgage.

9.      This Note and Mortgage were related to the real estate.

10.      National City Mortgage, a division of National City Bank of Indiana merged with PNC Bank, N.A. in October, 2008.

11.     On August 6, 2008, Clemens filed a petition for relief under Chapter 13 of Title 11 of the United States Code. (Case number 08-20493).

12.     Clemens named National City Mortgage as one of his creditors in the bankruptcy filing as the merger of National City Mortgage a division of National City Bank of Indiana did not occur until October, 2008.   *See* attached Exhibit B, a true and correct copy of Plaintiff's Schedule D from his bankruptcy filing..

13.     On August 9, 2008, the Bankruptcy Noticing Center ("BNC") served all creditors listed in Plaintiff's bankruptcy petition, including but not limited to National City Mortgage Company. *See* Exhibit C, a true and correct copy of the August 7, 2007 Notice of Bankruptcy Case, Meeting of Creditors & Deadlines.

14.     On August 6, 2008, Clemens filed a Chapter 13 Plan which was served by the BNC on August 9, 2008.

15.     On August 18, 2008, National City Mortgage Co. filed Proof of Claim 4-1 in Northern District of Illinois Case Number 08 B 20493 claiming a total amount due by the Debtor of $185,587.02.  *See* Exhibit D a true and correct copy of Proof of Claim 4-1.

16.     On September 9, 2008, Attorney Faiq Mihlar filed an Objection to Confirmation on behalf of National City Mortgage.  *See* attached Exhibit E, a true and correct copy of National City Mortgage Co.'s Objection to Confirmation.

17.     On November 11, 2008, Clemens filed a Modified Chapter 13 Plan.

18.     On November 13, 2008, Judge Pamela Hollis confirmed the Modified Chapter 13 Plan filed on November 11, 2008..  *See* Exhibit F, a true and correct copy of the Order Confirming Plan.

19.     On June 27, 2011, Attorney Faiq Mihlar filed a Motion for Relief from Stay on behalf of PNC Mortgage, a division of PNC Bank, National Association.

20.     Clemens converted his case to a case under Chapter 7 of Title 11 of the United States Code on January 31, 2012.

21.     Clemens received a discharge in the above referenced Chapter 7 case on May 7, 2012. *See* Exhibit G - a true and correct copy of Clemen's Discharge Order.

22.     On or about February 22, 2012, Clemens and Defendants entered into a Special Forbearance Agreement. The Special Forbearance Agreement required twenty four equal installments of $1,999.00 beginning on April 1, 2012 and continuing until March 1, 2014. The Special Forbearance Agreement was sent by Defendants and accepted by Clemens on February 27, 2014. The Executed original Special Forbearance Agreement was then sent via First Class Mail to Defendants per the instructions provided by Defendants. *See* Exhibit H - a true and correct copy of the February 22, 2012 Forbearance Agreement.

23.     Clemens made each and every payment in accordance with the forbearance agreement. (24 payments in the amount of $2,000.00 which is a little more than the agreement demanded). *See* Group Exhibit I - true and correct copies of all receipts for payments made to Defendants.

24.     On April 28, 2014, in response to Clemens' request for payment history and escrow analysis, PNC mailed the attached Exhibit J - a true and correct copy of the letter and accounting tendered by PNC. The attached Exhibit J reflects that all payments required by the Special Forbearance Agreement were in fact received by Defendants. *See* Group Exhibit J - true and correct copies of the April 28, 2014 letter and accounting tendered by PNC.

25.     On May 19, 2014, Clemens faxed a letter to PNC Claims Department with proof of all 24 payments in the amount of $2,000.00 made pursuant to the modification. *See* Exhibit K - a true and correct copy of the May 19, 2014 letter.

26.     On June 25, 2014, in response to Clemens' request for a current escrow analysis, PNC mailed the attached Escrow Analysis from 2006 and 2007. *See* Attached Exhibit L - a true and correct copy of the letter and escrow analysis sent by Defendants.

27.     On July 7, 2014, in response to Clemens' additional requests for a complete accounting and escrow analysis, PNC mailed a second account history.  The account histories mailed on April 28, 2014 and July 7, 2014 do not match. *See* attached Exhibit J - a true and correct copy of the April 28, 2014 letter and accounting from PNC and Exhibit M - a true and correct copy of the July 7, 2014 letter and accounting from Defendants.

28.     On August 15, 2014, the Bankruptcy Counsel for Clemens, David Lloyd, sent a Qualified Written Request to PNC disputing the balance and requesting a breakdown and application of all payments, fees and costs. *See* Exhibit N - a true and correct copy of David Lloyd's letter.

29.     On September 24, 2014, PNC Mortgage sent a letter to Clemens advising Clemens that his payment in the amount of $1,700.00 was put towards a past due balance of $5,538.45 and held in a suspense account.  This was not correct as Clemens continued to make regular payments and all payments had been made under the Special Forbearance Agreement *See* Exhibit O - A true and correct copy of PNC's September 24, 2014 letter.

30.     On October 6, 2014, PNC Mortgage returned Clemens' payment of $1,700.00 alleging that the monthly payment was not enough to reinstate his loan. *See* Exhibit P - a true and correct copy of PNC's October 6, 2014 letter.

31.     On October 7, 2014, PNC Mortgage sent Clemens a Grace Period Notice and Notice regarding Foreclosure Options. *See* Exhibit Q - a true and correct copy of PNC's October 6, 2014 letter.

32.     To date, PNC has failed to respond to the August 15, 2014 Qualified Written Request by Attorney David Lloyd.  Clemens and Lloyd asked for account payment details and escrow analysis on several occasions and that the Defendants correct their records to show that Clemons complied with the Special Foreclosure Agreement and that he was current.

33.     The May 19, 2014 by Clemens and the August 15, 2014 letter by Attorney David Lloyd were Qualified Written Requests ("Qualified Written Requests").

## COUNT I - VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) AGAINST ALL DEFENDANTS

34.     CLEMENS restates and realleges paragraphs 1 through 33 as though fully set forth herein.

35.     The Defendants qualify as a "servicer" under RESPA § 2605(i)(2) of a "federally related mortgage loan" as that term is defined in Section 2602(1) of Title 12 of the United States Code.

36.     The May 19, 2014 letter by Plaintiff to Defendants (Exhibit K) and the August 15, 2014 letter by Attorney David Lloyd to Defendants were Qualified Written Requests under Section 2605 of RESPA (Title 12 of the United States Code)("Qualified Written Requests").

37.     The "Qualified Written Requests" were not acknowledged within 20 days of receipt as required by Section 2605(e)(1)(A) of Title 12 of the United States Code and Section 3500.21(e)(1) of Reg. X.

38.     The Defendants did not, within 60 days of receipt of the Qualified Written Requests, provide the information requested and inform Clemons or Attorney David Lloyd of its

actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code and Section 3500.21(e)(3) of Reg. X.

39.     The Defendants failed to comply with Section 2605 of Title 12 of the United States Code by failing to respond to the Qualified Written Requests.

40.     Plaintiff has suffered actual damages and additional damages from violations of RESPA §§ 2605 and 2609 in the amount of the wrongful charges – without notice, disclosure, or authority to do so.

41.     Pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X, the Plaintiff may recover of the Defendants actual damages, costs and reasonable attorney fees for each failure of the Defendants to comply with any part of Section 2605 of Title 12 of the United States Code.

42.     The Plaintiff and his attorneys have expended numerous hours regarding these matters.

**WHEREFORE**, the Plaintiff having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A.  That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the Form of actual damages;

B.  That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

C.  That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D.  That the Plaintiff have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney to be determined by this Court for each

failure to comply with any part of Section 2605 of Title 12 of the United States

Code and Section 3500.21(f) of Reg. X.;

E. That the underlying debt to PNC be forever cancelled and discharged and the

Defendants be ordered to release all liens on the residence of the Plaintiff and mark

":paid in full" on all loan documents with said documents to be delivered to the

Plaintiff with all lens duly canceled and released as an additional sanction; and

F. awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT ("ICFA") AGAINST ALL DEFENDANTS

43.     CLEMENS restates and realleges paragraphs 1 through 33 as though fully set

forth herein.

44.     Defendants violated 815 ILCS 505/2 by engaging in an unfair and deceptive act

or practice by using fraud, deception, and misrepresentation in their efforts to collect an incorrect

debt from CLEMENS. The failure to properly account was intended to induce CLEMENS into

thinking he would have to pay additional arrearage to avoid a foreclosure.

45.     Defendants did not conduct a reasonable investigation into its own Special

Forbearance Agreement and failed to properly apply payments as agreed.

46.     Defendants' pattern and practice of not adhering to its modifications and

forbearance agreements forces unsuspecting homeowners to pay money that is not properly due.

47.     Defendants' pattern and  practice described above amounts to an unfair, deceptive

and improper use of the courts in connection with the collection of a debt.

48.     The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

Unfair methods of competition and unfair or deceptive acts or practices, including
but not limited to the use or employment of any deception, fraud, false pretense,

false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

49.     CLEMENS is a consumer as defined by ICFA, 815 ILCS 505/1(e).

50.     Defendants' attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

51.     As a result of this unfair and deceptive conduct, CLEMENS had to expend time in this matter.

52.     Defendants' intended that CLEMENS rely on their misrepresentations.

53.     ICFA further states:

Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper. 815 ILCS 505/10a.

54.     CLEMENS was harmed by Defendants' unfair and deceptive practices because he had to spend time and energy correcting faulty accounting and avoiding improper foreclosure.

55.     CLEMENS was further harmed by Defendants' unfair and deceptive practices as he incurred costs by retaining counsel to investigate the claims of Defendants alleging that payments were in arrears.

56.     CLEMENS was also exposed to significant emotional strain as a result of the Defendants' unfair and deceptive business practices.

57.     Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which the Defendants routinely engages as part of their business model.

58.     An award of punitive damages is appropriate because Defendants' conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and CLEMENS's rights thereunder.

59. As such, CLEMENS is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, DAVID J. CLEMENS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

A.  declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

B.  awarding CLEMENS actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

C.  ordering the deletion of all adverse credit reporting related to the alleged debt;

D.  awarding the CLEMENS costs and reasonable attorney fees; and

E.  awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III - BREACH OF CONTRACT

60.     CLEMENS restates and realleges paragraphs 1 through 33 as though fully set forth herein.

*Contract Formation:  Offer and Acceptance*

61.     As described above the Forbearance Agreement executed by Defendants and Plaintiff constitutes a valid contract.

62.     Defendants' sending of the Forbearance Agreement to Plaintiff was an offer, and Plaintiff accepted this offer by executing the Forbearance Agreement and sending it back to Defendant.  In the alternative, Defendant' sending of the Forbearance Agreement to Plaintiff was an invitation to deal.  Plaintiff's execution of the Forbearance Agreement and sending to

Defendants constituted an offer.  Defendants accepted the offer by accepting payments and not foreclosing.

63.     The Forbearance Agreement is supported by consideration in the form of an exchange of mutual promises.  Plaintiff promised to make payments on time.  The Forbearance is further supported consideration in the form of each party foregoing legal obligations and rights. Plaintiff forewent alternate avenues he could have pursued such an additional Chapter 13 bankruptcy or listing the property for sale.   Defendants agreed to forego foreclosure proceedings and late fees.  Both sides benefited from the exchange in that Plaintiff was presented with an opportunity to save his home while Defendants enjoyed the ability to keep a paying customer and avoid the costs and risks associated with foreclosure.

64.     In the alternative, Plaintiff's justifiable reliance serves as a substitute for any lack of consideration.

65.     Plaintiff made all payments and otherwise complied with the Forbearance Agreement.

66.     Defendants treated the Forbearance Agreement as if Plaintiff breached the Agreement which was not the case.  Plaintiff in fact made each and every payment called for by the Forbearance Agreement timely and in excess of the amount called for by the Forbearance Agreement.

67.     The action of Defendants constitutes a breach of the Forbearance Agreement by Defendants causing Plaintiff to suffer to suffer damages including but not limited to potentially losing his home and his family's home, a negative impact on credit scores, potential additional fees and other lost opportunities to lose his home.

68. Additionally, the Forbearance contained an implied duty of good faith and fair dealing. Defendants had a duty to perform consistent with its duty of good faith and fair dealing.

69. The Defendants routinely and regularly breached these implied duties by:

a. failing to perform loan servicing functions consistent with its responsibilities to Plaintiff using acceptable professional standards of care;

b. failing to properly supervise its agents and employees including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys or otherwise use individuals with suitable training, education, experience and skills to perform loan servicing functions;

c. failing to implement an appropriate and functioning management system;

d. providing false justifications for improper posting of payments;

e. systematically making inaccurate calculations and determinations of the Plaintiff's alleged default;

f. unreasonably finding Plaintiff in default when Plaintiff fully complied with the Forbearance Agreement and subsequent payments'

g. acting in a manner that otherwise constitutes an abuse of discretion or authority under the Forbearance Agreement or taking steps to frustrate Plaintiff's ability to receive the benefit of his bargain under the Forbearance Agreement.

70. As an actual and proximate result of Defendants' breaches of these express and implied contractual terms described herein, Plaintiff has suffered harm and is threatened with additional harm. Plaintiff has been additionally damaged by the loss of the funds paid over the course of the Forbearance Agreement but in the form of lost time and opportunity costs. By entering into the Forbearance Agreement and making his payments, Plaintiff spent monies on a

plan that could have gone towards other potential remedies that he  might have pursued to save his home.  Plaintiff also lost the opportunity to restructure the debt under Chapter 13, see his home on favorable terms, pursue refinancing options with other lenders, take other steps to address their financial  hardship and threatened loss of his home, perform efficient breaches to cut their losses or other actions.  Plaintiff suffered negative impact on this credit score and paid late fees assessed under the Forbearance Agreement.

71.     An award of damages, may be inadequate to compensate Plaintiff for the harm caused by Defendants.  As such, Plaintiff, additionally seek injunctive relief in the form of an order compelling Defendants to specifically perform the Forbearance Agreement and give Plaintiff the current mortgage upon payments made that the Plaintiff was promised.

72.     Besides Specific Performance damages for Defendants' breach of contract to the maximum allowed by law, and in any case, interest, costs, and attorney fees should be awarded.

WHEREFORE, Plaintiff, DAVID J. CLEMENS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

A.  Award Plaintiff actual and compensatory damages for breach of contract including attorney fees in an amount to be determined at trial and order Defendants to specifically perform under the Special Foreclosure Agreement;

B.  Award Plaintiff actual and compensatory damages and order other equitable relief and specific performance as justice requires;

C.  Enter an Order preliminarily and permanently enjoining Defendants from its unlawful and unfair practices against Plaintiff;

D.  Ordering the deletion of all adverse credit reporting as to Plaintiff related to the alleged debt;

E.  Awarding the Plaintiff costs and reasonable attorney fees; and

F.  awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV - PROMISORY ESTOPPEL

73.     Plaintiff repeat and re-allege the allegations of paragraphs 1-33 above as if set forth herein in full.

74.     Defendants by way of its Forbearance Agreement, unambiguously promised to Plaintiff that he made his payments on time and otherwise fully complied with the terms of the Forbearance Agreement, that Plaintiff would be current on his mortgage loan.

75.     Defendants' promise was intended to induce Plaintiff to rely on it and make payments and otherwise perform.

76.     Plaintiff indeed relied on Defendants' promise by submitting payments and otherwise fully performing under the Forbearance Agreement.

77.     Given the language of the Forbearance Agreement, Plaintiff's reliance was reasonable.

78.     Plaintiff's reliance was to his detriment.   Plaintiff has yet to be deemed current by Defendants pursuant to Forbearance Agreement, has lost the value of the payments, the opportunity to fund other strategies to deal with the original default and avoid foreclosure or perform an efficient breach to cut his losses, has experienced adverse effects on his credit score, incurred damages while defending against a prospective foreclosure and paid late fees and other fees.

79.      An award of damages, may be inadequate to compensate Plaintiff for the harm caused by Defendant.  As such, Plaintiff, additionally seek injunctive relief in the form of an order compelling Defendants to specifically perform the Forbearance Agreement and give Plaintiff the current mortgage upon payments made that the Plaintiff was promised.

14

80.     Besides Specific Performance damages for Defendants' breach of contract to the maximum allowed by law, and in any case, interest, costs, and attorney fees should be awarded.

WHEREFORE, Plaintiff, DAVID J. CLEMENS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

A.      Award Plaintiff actual and compensatory damages for promissory estoppel including attorney fees in an amount to be determined at trial and order Defendants to specifically perform under the Special Foreclosure Agreement;

B.      Award Plaintiff actual and compensatory damages and order other equitable relief and specific performance as justice requires;

C.      Enter an Order preliminarily and permanently enjoining Defendants from its unlawful and unfair practices against Plaintiff;

D.      Ordering the deletion of all adverse credit reporting as to Plaintiff related to the alleged debt;

E.      Awarding the Plaintiff costs and reasonable attorney fees; and

F.      awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT V - FRAUDULENT MISREPRESENTATION

66.     Plaintiff repeat and re-allege the allegations of paragraphs 1-33 above as if set forth herein in full.

67.     In its Forbearance Agreement that it prepared and sent to Plaintiff, Defendants intentionally misrepresented to Plaintiff that if all payments were made Plaintiff would be current on his mortgage loan.

68.     Defendants knew these representations were false at the time Defendants sent the Forbearance Agreement to Plaintiff.  Defendants had no intention to deem Plaintiff current or to report that Plaintiff was current on his mortgage loan.   Instead it devised and implemented a

scheme whereby it extract as much money as possible for as long as possible while receiving hefty fees for servicing their loans.

69.	These representations were also material insofar as Plaintiff would not have entered into the Special Forbearance Agreement or otherwise wasted time and resources attempting to comply with its terms has they known Defendants had no intention to comply with the Special Forbearance Agreement.

70.	Defendants made these false representations to induce Plaintiff to enter into the Forbearance Agreement and make payments as long as possible.

71.	Plaintiff reasonably relied on Defendants' false representation by entering into and complying with the terms of the Special Forbearance Agreement.

WHEREFORE, Plaintiff, DAVID J. CLEMENS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

A.	Award Plaintiff actual and compensatory damages for fraudulent misrepresentation including attorney fees in an amount to be determined at trial and order Defendants to specifically perform under the Special Foreclosure Agreement;

B.	Award Plaintiff actual and compensatory damages and order other equitable relief and specific performance as justice requires;

C.	Enter an Order preliminarily and permanently enjoining Defendants from its unlawful and unfair practices against Plaintiff;

D.	Ordering the deletion of all adverse credit reporting as to Plaintiff related to the alleged debt;

E.	Awarding the Plaintiff costs and reasonable attorney fees; and

F. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: December 23, 2014                 Respectfully Submitted,

<div style="margin-left: 45%;">

/s/ Paul M. Bach
Paul M. Bach, Esq. ARDC #6209530
Penelope N. Bach, Esq. ARDC #6284659
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188

</div>